FILED

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
## ALEXANDRIA DIVISION

2014 SEP 17 P 3: 28

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

TIGERS LIMITED and )
TIGERS (USA) GLOBAL LOGISTICS INC., )
)
    Plaintiffs, )
)
v. )
)
ARTEMIS GLOBAL INC. )
(f/k/a TAMERLANE GLOBAL SERVICES) )
)
    Defendant. )

CIVIL ACTION NO. 1:14cv1229-AJT-TRT

**DEMAND FOR JURY TRIAL**

## COMPLAINT

Plaintiffs, Tigers Limited and Tigers (USA) Global Logistics Inc. (collectively, "Tigers"), file this Complaint against Defendant, Artemis Global Logistics and Solutions, formerly known as Tamerlane Global Services ("Artemis"). Tigers states and alleges the following:

### BACKGROUND

1.    Tigers engaged Artemis to make two cargo moves in Afghanistan and Pakistan. Artemis demanded that Tigers wire $159,052.76 to Artemis so that Artemis could convey that amount to Artemis' subcontractors to complete the moves. Tigers, relying in good faith upon Artemis' representation, wired $159,052.76 to Artemis for the sole purpose of paying the subcontractors. Rather than pay the subcontractors, Artemis pocketed the money. When Tigers asked about the status of the cargo and payment to Artemis' subcontractors, Artemis' President and CEO, James Michael O'Brien ("O'Brien"), made up a fantastical story that unnamed truckers had been "gifted" the cargo in Pakistan, that Artemis had already paid the truckers $100,000 of its own money, and that O'Brien was heroically braving the elements of Pakistan with briefcases of cash to negotiate with tribal "elders" for the release of the cargo. It turns out

that none of that was true.   Instead, Tigers has learned that Artemis' subcontractor is an established Dubai corporation, the cargo was never gifted to anyone, the cargo never entered Pakistan, Artemis never paid a dime to its subcontractor, and neither O'Brien nor anyone from Artemis ever met with anyone in Pakistan about the cargo.   Artemis and O'Brien have ignored numerous attempts by Tigers and Artemis' subcontractor to contact them.   Artemis and O'Brien have defrauded Tigers of $159,052.76, and their misconduct has led to consequential damages and costs.   Moreover, Artemis' subcontractor will not release the cargo until it receives payment.

## PARTIES

2.   Tigers is a global logistics and transportation company that specializes in bespoke supply chain solutions, e-fulfilment, and transportation by air, sea, and road.

3.   Artemis is a logistics and project management firm.   James Michael O'Brien is the President and Chief Executive Officer of Artemis.

## JURISDICTION AND VENUE

4.   Tigers Limited is a foreign corporation organized and existing under the laws of the United Kingdom, with its principal place of business located at 4A, Kenning Industrial Building, 19 Wang Hoi Road in Kowloon Bay, Kowloon, Hong Kong.   Tigers (USA) Global Logistics Inc. is a domestic corporation organized and existing under the laws of the state of New Jersey, with its principal place of business located at 25 Northwest Point Boulevard in Elk Grove Village, Illinois.   For purposes of jurisdiction, Tigers (USA) Global Logistics Inc. is a citizen of the States of New Jersey and Illinois.

5.   Artemis is a corporation organized and existing under the laws of the state of Virginia with its principal place of business located at 754 Elden Street, Suite 301 in Herndon, Virginia.   For purposes of jurisdiction, Artemis is a citizen of the State of Virginia.

6.      In this case, every issue of law and fact is wholly between citizens of different states.

7.      In the case, the amount in controversy, exclusive of fees, interests or costs exceeds $75,000.

8.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332.

9.      Artemis transacts business within the State of Virginia on a substantial and continuous basis.

10.      This Court has personal jurisdiction over Artemis under Virginia Code §8.01-328.1(A)(1) because Artemis has transacted business in this judicial district. Target also has substantial, continuous and systematic contacts within this judicial district of such a nature as to make the State's assertion of jurisdiction reasonable.

11.      Venue is proper in this Court pursuant to 28 U.S.C. §1391.

12.      Pursuant to Local Civil Rule 3(C), this matter is properly assigned to the Alexandria Division.

## FACTS

13.      The Louis Berger Group, Inc. ("LBG") engaged Tigers and Artemis to move twelve (12) trucks from Tarin Kowt, Afghanistan to the U.S. Bagram Air Base in Kabul, Afghanistan ("Move 1") and seven (7) trucks from Konduz Afghanistan to Karachi Pakistan Port ("Move 2") (collectively, "LBG Moves").

14.      On September 6, 2013, Tigers and Artemis entered into a valid and enforceable written contract, titled PRIMARY – Agency Agreement ("Contract"). The Contract is attached to this Complaint as Exhibit 1.

15. Artemis represented to Tigers that Artemis itself would be performing the LBG Moves.

16. After Move 1 was completed, Tigers learned that the Move 2 cargo was not delivered.

17. When Tigers asked Artemis about the status of the Move 2 cargo, Artemis revealed that Artemis had hired subcontractors to perform the LBG Moves and that the subcontractors were holding the Move 2 cargo in Pakistan until they were paid for Move 1.

18. Artemis represented to Tigers that it had previously paid $100,000 to the subcontractors relating to Move 1.

19. Artemis refused to divulge the identity of the subcontractors that Artemis had hired and refused to allow Tigers personnel to meet with the subcontractors.

20. On March 2, 2014, Artemis submitted an invoice to Tigers for Move 1, in the amount of $159,052.76 for payment to the subcontractors.

21. Artemis represented to Tigers that, if Tigers transferred $159,052.76 to Artemis, Artemis would convey that money to the subcontractors.

22. On March 12, 2014, relying upon Artemis' representations that it had incurred costs of $159,052.76 to Artemis' subcontractors in relation to Move 1 and that Artemis would convey the $159,052.76 to the subcontractors, Tigers wired payment to Artemis in the amount of $159,052.76 for the sole purpose of paying the subcontractors in relation to Move 1, Artemis acknowledged that it received such payment on that same day.

23. On March 14, 2014, Artemis represented to Tigers that the Move 2 cargo had been "gifted" to truckers in Pakistan.

4

24.    On March 14, 2014, Artemis represented to Tigers that O'Brien travelled to Pakistan to meet with unidentified tribal "elders" to negotiate the release of the Move 2 cargo from the truckers.

25.    On March 14, 2014, Artemis represented to Tigers that the truckers decided to retain the Move 2 cargo because Tigers' wire payment was too late and because the truckers came to believe that the Move 2 cargo was significantly more valuable than the debts owed for the trucking.

26.    From mid-April 2014 through the present, Artemis ignored Tigers' repeated requests for information about the status of the Move 2 cargo and Tigers' payment to Artemis in the amount of $159,052.76 for the purpose of paying Artemis' subcontractors.

27.    Through its own investigation, Tigers has learned that Artemis' hired one subcontractor to perform the LBG Moves, which is a Dubai-based company called Ghazanfar Group, LLC ("Ghazanfar").

28.    Ghazanfar is holding the Move 2 cargo at its facilities in Afghanistan.

29.    The Move 2 cargo was not gifted to anyone.

30.    The Move 2 cargo never entered Pakistan.

31.    O'Brien did not travel to Pakistan to meet with Ghazanfar.

32.    Artemis did not travel to Pakistan to meet with Ghazanfar.

33.    Ghazanfar did not decide to retain the Move 2 cargo because Tigers' wire payment was too late.

34.    Ghazanfar did not decide to retain the Move 2 cargo because Ghazanfar came to believe that the Move 2 cargo was significantly more valuable than the debts owed for the trucking.

5

35.     To date, Artemis has not conveyed to Ghazanfar any of the $159,052.76 that Tigers transferred to Artemis.

36.     To date, Artemis has not conveyed to Ghazanfar any money at all.

37.     To date, Ghazanfar is holding the Move 2 cargo because Artemis has not paid Ghazanfar in relation to the LBG Moves.

38.     Artemis' refusal to pay Ghazanfar and misconduct has caused additional and consequential costs for Tigers in relation to the LBG Moves.  To date, Ghazanfar seeks payment from Tigers in the amount of $244,427 in relation to the LBG Moves.  To date, Ghazanfar is holding the cargo and will not release the cargo until it receives payment.  Artemis, by its officers, employees, representatives and/or sub-contractors, has committed acts of, error, omission, or misconduct that has caused delay, loss and additional expense regarding LBG Moves.

### COUNT I – FRAUD

39.     Tigers incorporates and restates the allegations set forth in Paragraphs 1-38, as if fully alleged herein.

40.     Artemis made a false representation to Tigers that, if Tigers transferred $159,052.76 to Artemis, Artemis would convey that money to Ghazanfar.

41.     Artemis' false representation to Tigers that, if Tigers transferred $159,052.76 to Artemis, Artemis would convey that money to Ghazanfar was a material fact.

42.     Artemis intentionally and knowingly made the false representation to Tigers that, if Tigers transferred $159,052.76 to Artemis, Artemis would convey that money to Ghazanfar.

43.     Artemis' false representation to Tigers that, if Tigers transferred $159,052.76 to Artemis, Artemis would convey that money to Ghazanfar was made with intent to mislead Tigers.

44.     Tigers reasonably relied upon Artemis' false representation to Tigers that, if Tigers transferred $159,052.76 to Artemis, Artemis would convey that money to Ghazanfar.

45.     In reasonable and good faith reliance upon Artemis' false representation to Tigers that, if Tigers transferred $159,052.76 to Artemis, Artemis would convey that money to Ghazanfar, Tigers transferred $159,052.76 to Artemis.

46.     Artemis' false representations have caused Tigers to suffer actual and consequential damages, including, but not limited to $244,427 sought by Ghazanfar, lost profits, expenditure of attorneys' fees and the costs of this lawsuit, deprivation of access to the Move 2 cargo, and a loss of goodwill with LBG.

### COUNT II – UNJUST ENRICHMENT

47.     Tigers incorporates and restates the allegations set forth in Paragraphs 1-46, as if fully alleged herein.

48.     Artemis' demands for, consequent receipt of, and retention of $159,052.76 constitute an unjust enrichment to Artemis.

49.     Tigers transferred $159,052.76 to Artemis despite the absence of any valid obligation owing to Artemis.

50.     Artemis accepted and has retained $159,052.76 from Tigers knowing that Artemis had no right to retain this money.

51.     Artemis' unjust enrichment has caused Tigers to suffer actual and consequential damages, including, but not limited to $244,427 sought by Ghazanfar, lost profits, expenditure of

attorneys' fees and the costs of this lawsuit, deprivation of access to the Move 2 cargo, and a loss of goodwill with LBG.

## COUNT III – CONVERSION / CIVIL THEFT

52.     Tigers incorporates and restates the allegations set forth in Paragraphs 1-51, as if fully alleged herein.

53.     In reliance on Artemis' representation that Tigers owed $159,052.76 to Ghazanfar as payment for moving cargo and that if Tigers transferred $159,052.76 to Artemis, Artemis would convey that money to Ghazanfar, Tigers wired $159,052.76 to Artemis for the sole purpose of conveying that money to Ghazanfar.

54.     Artemis has not conveyed to Ghazanfar any portion of the $159,052.76 that Tigers wired to Artemis for the sole purpose of paying Ghazanfar in relation to Move 1.

55.     By retaining Tigers' payment for Move 1 rather than conveying it to Ghazanfar, Artemis wrongfully exercised and assumed authority over Tigers' payment and has deprived Tigers of its possession and enjoyment of such payment.

56.     By retaining Tigers' payment for Move 1 rather than conveying it to Ghazanfar, Artemis has performed an act of dominion wrongfully exerted over Tigers' payment in denial of Tigers' right to the possession and enjoyment of such and inconsistent with Tigers' right to the possession and enjoyment of such payment.

57.     Artemis' conversion/civil theft has caused Tigers to suffer actual and consequential damages, including, but not limited to $244,427 sought by Ghazanfar, lost profits, expenditure of attorneys' fees and the costs of this lawsuit, deprivation of access to the Move 2 cargo, and a loss of goodwill with LBG.

8

## COUNT IV – BREACH OF CONTRACT

58.     Tigers incorporates and restates the allegations set forth in Paragraphs 1-57, as if fully alleged herein.

59.     The parties are sophisticated businesses that are familiar with contracts of the type at issue in this matter.

60.     Tigers fully performed any and all of its obligations under the Contract.

61.     Under the terms of the Contract, Artemis was required to "render prompt services of customs clearance and delivery for all individual shipments from [Tigers]... ." Exhibit 1, Section 3(b).

62.     Under the terms of the Contract, "Both parties shall indemnify and hold each other harmless from any damage, delay, loss or expense regarding shipments caused by any alleged act of negligence, error, omission or misconduct by their officers, employees, representatives and/or sub-contractors." Exhibit 1, Section 10(a).

63.     Artemis materially breached the Contract by failing to render prompt services of customs clearance and delivery for all individual shipments from Tigers.

64.     Under the terms of the Contract, "The Parties agree to conduct business in such manner as to mutually benefit both parties and will use their best efforts to promote each other's services." Exhibit 1, Section 2(b).

65.     Artemis materially breached the Contract by failing to conduct business in a manner that was mutually beneficial to Tigers and Tamerlane.

66.     Artemis, by its officers, employees, representatives and/or sub-contractors, has committed acts of, error, omission, or misconduct that has caused delay, loss and additional expense regarding LBG Moves.

67.     Artemis' breach of the Contract has caused Tigers to suffer actual and consequential damages, including, but not limited to $244,427 sought by Ghazanfar, lost profits, expenditure of attorneys' fees and the costs of this lawsuit, deprivation of access to the Move 2 cargo, and a loss of goodwill with LBG.

### COUNT V – BEACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

68.     Tigers incorporates and restates the allegations set forth in Paragraphs 1-67, as if fully alleged herein.

69.     Artemis and Tigers are in a contractual relationship an Artemis hired a subcontractor, Ghazanfar, to complete some of Artemis' obligations under the Contract.

70.     By telling Tigers that, if Tigers transferred $159,052.76 to Artemis, Artemis would convey that money to Ghazanfar, and by retaining Tigers' $159,052.76 rather than conveying the money to Ghazanfar, Artemis was dishonest, unreasonable, and acted in bad faith.

71.     Artemis' breach of the covenant of good faith and fair dealing has caused Tigers to suffer actual and consequential damages, including, but not limited to $244,427 sought by Ghazanfar, lost profits, expenditure of attorneys' fees and the costs of this lawsuit, deprivation of access to the Move 2 cargo, and a loss of goodwill with LBG.

### COUNT VI – DECLARATORY JUDGMENT

72.     Tigers incorporates and restates the allegations set forth in Paragraphs 1-71, as if fully alleged herein.

73.     Under the terms of the Contract, "Both parties shall indemnify and hold each other harmless from any damage, delay, loss or expense regarding shipments caused by any alleged act of negligence, error, omission or misconduct by their officers, employees, representatives and/or sub-contractors." Exhibit 1, Section 10(a).

10

74.    Artemis, by its officers, employees, representatives and/or sub-contractors, has committed acts of, error, omission, or misconduct that has caused delay, loss and additional expense regarding LBG Moves.

75.    This is an actual controversy between Tigers and Artemis of sufficient immediacy and reality to warrant issuance of a declaratory judgment as to Tigers and Artemis' legal rights and relations.

76.    The court possesses an independent basis for jurisdiction over Tigers and Artemis.

77.    The court will not abuse its discretion in its exercise of jurisdiction over Tigers and Artemis.

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully request that the Court enter judgment for Plaintiffs and against Defendant, awarding Plaintiffs relief as follows:

A.    All actual and consequential damages, including, but not limited to $244,427 sought by Ghazanfar, and any subsequent amounts that become due, in an amount to be determined at trial;

B.    Declaratory judgment that Artemis is solely responsible and liable for any claims, damages, including attorney fees and costs, in relation to any delay, loss and/or additional expense regarding the movement of cargo on behalf of LBG, and that Artemis shall hold harmless and indemnify Tigers for any claims, damages, including attorney fees and costs, in relation to any delay, loss and/or additional expense regarding the movement of cargo on behalf of LBG;

C.    All attorneys' fees, court costs, interest, and any award of any other actual and consequential damages; and

11

D.    Such further relief as the Court deems proper.

Dated: September 17, 2014                          Respectfully submitted,


_____
Katherine L. McKnight (VA Bar #81482)

BAKER & HOSTETLER, LLP
Washington Square, Suite 1100
1050 Connecticut Avenue, N.W.
Washington, DC 20036-5304
Telephone: (202) 861-1500
E-mail:    kmcknight@bakerlaw.com

Joel Griswold (*pro hac vice* pending)
BAKER & HOSTETLER, LLP
191 North Wacker Drive, Suite 3100
Chicago, IL  60606-1901
Telephone: (312) 416-6238
E-mail:    jcgriswold@bakerlaw.com

*Counsel for Plaintiffs*